Jerry Lee MEDICUS, Appellant,

v.

STATE of Indiana, Appellee.

No. 79S04–9507–CR–801.

Supreme Court of Indiana.

April 3, 1996.

C. Wayne Fountain, Helmerick Smith & Fountain, Lafayette, for Appellant.

Pamela Carter, Attorney General, Mary Dreyer, Deputy Attorney General, Office of the Attorney General, Indianapolis, for Appellee.

### ON PETITION TO TRANSFER

DeBRULER, Justice.

Appellant Jerry Lee Medicus was charged in the Tippecanoe County Court with one count of Battery on a Law Enforcement Officer, one count of Resisting Law Enforcement, two counts of Intimidation, two counts of Criminal Mischief, one count of Public Intoxication, and one count of Disorderly Conduct.[1] In a bench trial, appellant was found guilty on all counts except one of the intimidation counts. The trial court then sentenced appellant to ten years and 149 days of unsupervised probation. Later, the State filed a petition to revoke appellant's probation, which the trial court granted. In a memorandum decision, the Court of Appeals affirmed the trial court's revocation of appellant's probation. Transfer is granted. Ind.Appellate Rule 11(B)(2)(c).

Appellant claims that the trial court's failure to provide a written statement of reasons for his probation revocation and the evidence supporting that decision should result in a return to probation or, in the alternative, an order to the trial court to provide such a written statement in order for him to raise appropriate issues on appeal.

1. Ind.Code Ann. § 35–42–2–1 (West Supp.1993), Ind.Code Ann. § 35–44–3–3 (West Supp.1993), Ind.Code Ann. § 35–45–2–1(b) (West Supp.1993), Ind.Code Ann. § 35–43–1–2(a) (West Supp.1993), Ind.Code Ann. § 7.1–5–1–3 (West 1982), and Ind. Code Ann. § 35–45–1–3 (West Supp.1993), respectively.

Appellant was released on probation from the Tippecanoe County Jail on July 13, 1993. Later that same day, Officers Baumgartner and Cheever of the Lafayette Police Department were called to the corner of Seventh and Cincinnati in Lafayette, Indiana. There they found appellant lying on the ground. According to Baumgartner, appellant reeked of alcohol and feigned being deaf and dumb. When appellant eventually stood, he stumbled and was caught by the officers. Because of appellant's reddened eyes, inability to stand, and odor, Baumgartner attempted to arrest him for public intoxication. When asked to put his hands behind his back, appellant began to resist and kicked Baumgartner in the shin. As the officers wrestled him, they managed to handcuff appellant and tried to put him in their police car, yet he continued to struggle and kicked the door of the car. Finally, the officers put him prone on the ground. Meanwhile, appellant screamed profanities and threatened to kill them. After checking him for weapons, they finally put him in the car. On the way back to the jail, appellant continued to threaten them. Once at the jail, the jailors succeeded in restraining him.

The State immediately petitioned for a revocation of appellant's probation. At the probation revocation hearing, the State produced testimony of the events described in the paragraph immediately above. The trial court found that appellant violated his probation, saying:

the Court's going to find that the defendant has violated his terms of probation. Any (inaudible) violation of the term of good and lawful behavior.

Other than this statement, however, the record provides no other written statement by the trial court explaining its decision to revoke his probation or the evidence upon which the decision was based.

■ Though distinguished from criminal trials by their informality and flexibility, probation revocation hearings are nonetheless regulated by the Due Process Clause of the Fourteenth Amendment. U.S. Const., amend. XIV.; *Black v. Romano,* 471 U.S. 606, 610, 105 S.Ct. 2254, 2257, 85 L.Ed.2d 636 (1985). In *Morrissey v. Brewer,* the United States Supreme Court applied the Due Process Clause to parole revocation hearings and stated that the minimum requirements of a parole revocation hearing include

(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) *a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.*

*Morrissey v. Brewer,* 408 U.S. 471, 488–89, 92 S.Ct. 2593, 2603–04, 33 L.Ed.2d 484 (1972) (emphasis added). That court later held that for purposes of the due process analysis, there is no difference between a parole revocation hearing and a probation revocation hearing. *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973). Thus were the *Morrissey* requirements, including the written statement requirement, made applicable to both parole and probation revocation hearings. *See Black,* 471 U.S. at 611, 105 S.Ct. at 2257–58.

■ The State argues that appellant or his counsel heard or could have asked the judge to repeat his reasons for the revocation. It also claims that the reason for the revocation is obvious from the record at trial. These arguments are as unavailing as they are speculative. Due process requires that the reasons for revoking probation be clearly and plainly stated by the sentencing judge not merely to give appellant notice of the revocation, but also to facilitate meaningful appellate review. As the United States Supreme Court has itself noted, the purposes of the written statement requirement are to help "insure accurate factfinding with respect to any alleged violation" and to provide "an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence." *Black,* 471 U.S. at 613–14, 105 S.Ct. at 2258–59. Whether ap-

pellant or his counsel heard or could have heard the statement is therefore irrelevant.

■ In the present case, the trial court's statement at appellant's revocation hearing does not satisfy *Morrissey's* written statement requirement and fails to serve its purposes. It recites none of the facts surrounding the violation and therefore gives neither guidance into the trial judge's reasons for revoking appellant's probation nor the evidence used in making the decision. In short, the statement is simply too cursory to be helpful.

### Conclusion

The cause is remanded to the trial court for a probation revocation statement consistent with this opinion.

SHEPARD, C.J., and SULLIVAN and SELBY, JJ., concur.

DICKSON, J., dissents.