**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MATTHEW J. ELKIN**
Deputy Public Defender
Kokomo, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| AUSTIN HARMON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 34A05-1109-CR-494 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HOWARD SUPERIOR COURT
The Honorable William C. Menges, Jr., Judge
Cause No. 34D01-1001-FB-71

**April 2, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Judge**

## STATEMENT OF THE CASE

Austin Harmon appeals the trial court's revocation of his probation. We remand.

## ISSUE

Whether the trial court erred by revoking Harmon's probation.

## FACTS

In January 2010, the State charged Harmon with Count 1, class D felony possession of marijuana; Counts 2 and 3, class D felony possession of a controlled substance; and Count 4, class B felony dealing in a Schedule II controlled substance. At the time he committed these offenses, Harmon was on probation. On June 23, 2010, Harmon entered into a written plea agreement, wherein he agreed to plead guilty to class D felony possession of marijuana, and the State agreed to dismiss the remaining charges and not to file a petition to revoke his probation in his other case. The State also agreed to recommend that Harmon serve a three-year sentence, with all of it suspended except one year that would be served on in-home detention, and two years of supervised probation. That same day, the trial court sentenced Harmon to three years, all of which was suspended except for 178 days executed with credit for time served. The trial court placed Harmon on supervised probation for the balance of his suspended sentence and, as a condition of probation, ordered him to complete six months of home detention as well as a drug and alcohol program. On July 1, 2010, the trial court held a probation rules hearing, during which the court read the rules of probation to Harmon and he signed them.

Approximately six months later, on January 10, 2011, the State filed a petition to revoke Harmon's suspended sentence.[1] The State alleged that Harmon had violated probation by failing to report to the probation department on October 7, 2010, and by failing to submit to a urine drug screen on December 3, 2010.

The trial court held a probation revocation hearing on September 1, 2011. During the hearing, probation officer, Dustin Delong, testified that Harmon started supervised probation in this case on June 24, 2010. Delong testified that Harmon failed to report to probation as instructed on October 7, 2010. Delong also testified that when he went to Harmon's house for a home visit on December 2, 2010, Harmon was unable to use the restroom. Delong then instructed Harmon to report the following day for a drug screen, but Harmon failed to do so. When asked whether the probation rules regarding reporting and submitting for a drug screen were explained to Harmon so he knew that he needed to follow them, Delong answered in the affirmative.

After the State rested, Harmon moved for directed verdict, arguing that the State had failed to prove that Harmon had violated probation because the State had not introduced Harmon's rules of probation into evidence and had, therefore, presented no evidence that Harmon had probation rules or that he had signed any such rules. The trial court took judicial notice of its own court record, including Harmon's signed probation rules and the chronological case summary, which indicated that on July 1, 2010, Harmon

---

[1] The State also filed a petition of non-compliance with home detention, alleging that Harmon had violated his home detention agreement by tampering with his monitoring equipment and by failing to respond to home detention staff at his house. During the revocation hearing, the State did not present any evidence regarding Harmon's alleged home detention violations; therefore, we will not discuss them any further.

appeared in court where the rules of probation were read to and signed by Harmon, and that he was served with a copy of those rules. The trial court denied Harmon's directed verdict motion. Thereafter, Harmon introduced evidence to show that he was also on probation in another case at the time of the alleged probation violations in this case. Following arguments by the parties, the trial court determined that Harmon had violated his probation, revoked his probation, and ordered him to serve his previously suspended sentence.

DECISION

Harmon argues that the trial court erred by revoking his probation. Specifically, Harmon asserts that the trial court violated his procedural due process rights by (1) taking judicial notice of the trial court's record; and (2) failing to set forth in writing the evidence relied on and reasons for revoking his probation.[2]

Probation is a favor granted by the State, not a right to which a criminal defendant is entitled. *Parker v. State*, 676 N.E.2d 1083, 1085 (Ind. Ct. App. 1997). Nonetheless, once the State grants that favor, it cannot simply revoke the privilege at its discretion. *Id.* "Probation revocation implicates a defendant's liberty interest[,] which entitles him to

---

[2] Harmon also seems to suggest that his revocation is improper because he alleges that he had not started his probationary period on this probation at the time of the alleged probation violations in this case. Because he makes no cogent argument regarding the same, we conclude he has waived review of this issue. Waiver notwithstanding, we have previously explained that a defendant's probationary period begins from the date of sentencing and ends at the conclusion of the probationary period and that probation can be revoked even though a defendant's probationary phase of his sentence has not begun. *See Baker v. State*, 894 N.E.2d 594, 597-98 (Ind. Ct. App. 2008); *see also Rosa v. State*, 832 N.E.2d 1119, 1121 (Ind. Ct. App. 2005) (declining to hold that a defendant could commit any number of offenses between the date of sentencing and the beginning of his official probation term without consequence of a probation violation and holding that the trial court was not precluded from revoking defendant's probation where the date of his official probation had a delayed commencement).

some procedural due process." *Id.* (citing *Gagnon v. Scarpelli,* 411 U.S. 778, 782, (1973); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Because probation revocation does not deprive a defendant of his absolute liberty, but only his conditional liberty, he is not entitled to the full due process rights afforded a defendant in a criminal proceeding." *Id.*

The minimum requirements of due process include: (a) written notice of the claimed violations of probation; (b) disclosure to the probationer of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body; and (f) a written statement by the factfinder as to the evidence relied on and reasons for revoking probation. *Id.* (citing *Morrissey*, 408 U.S. at 489). *See also Medicus v. State*, 664 N.E.2d 1163, 1164 (Ind. 1996).

1. Judicial Notice

Harmon contends that it was improper for the trial court to take judicial notice of its court file and that, as a result, he was denied his due process right to confrontation. In regard to judicial notice in probation revocation proceedings, our supreme court has stated that

> while it is widely recognized that a trial court may not take judicial notice of its own records in another case previously before the court even on a related subject with related parties, this rule should not be fully applicable in probation revocation hearings. Given the nature of a revocation proceeding, to require technical procedural and evidentiary rules similar to those required at the pretrial and trial phases of our criminal justice system would unduly burden revocation proceedings.

5

*Henderson v. State*, 544 N.E.2d 507, 513 (Ind. 1989) (quoting *Szymenski v. State*, 500 N.E.2d 213, 215 (Ind. Ct. App. 1986), *reh'g denied*) (internal citations omitted). *See also Whatley v. State*, 847 N.E.2d 1007, 1009 (Ind. Ct. App. 2006) (explaining that "the rule barring a trial court from taking judicial notice of other cases previously before that court has not been applied to probation revocation hearings"). Therefore, here, we conclude that it was not improper for the trial court to take judicial notice of its own court file.

2. Written Statement

Harmon also argues that the trial court violated his due process rights by failing to issue a written statement detailing the evidence relied on and the reasons for revoking his probation.

"Due process requires a written statement by the fact finder regarding the evidence relied upon and the reasons for revoking probation." *Hubbard v. State*, 683 N.E.2d 618, 620 (Ind. Ct. App. 1997).[3] This written statement requirement is a "procedural device aimed at promoting accurate fact finding and ensuring the accurate review of revocation decisions." *Id.* at 620-21 (footnote omitted); *see also Medicus*, 664 N.E.2d at 1164 (explaining that "[d]ue process requires that the reasons for revoking probation be clearly and plainly stated by the sentencing judge not merely to give appellant notice of the revocation, but also to facilitate meaningful appellate review"). Placing the transcript of the evidentiary hearing in the record may, however, be sufficient to satisfy the written

---

[3] Where a defendant admits to violating probation, procedural due process safeguards, including the written statement requirement, are "unnecessary." *See Terrell v. State*, 886 N.E.2d 98, 101 (Ind. Ct. App. 2008), *trans. denied*. Here, Harmon did not admit to the alleged probation violations.

6

statement requirement, but it does so only if the transcript contains a "clear statement of the trial court's reasons for revoking probation." *Hubbard*, 683 N.E.2d at 621.

Here, neither the trial court's written order nor the trial judge's statement during the revocation hearing specify the reasons for revoking Harmon's probation or the evidence upon which it relied to revoke his probation. Indeed, at the revocation hearing and in its written order, the trial court states merely that Harmon "violated the terms of his probation." Tr. at 18; App. at 10. Our supreme court has held that such a statement is "too cursory" and fails to satisfy the due process written statement requirement or serve its purposes. *See Medicus*, 664 N.E.2d at 1165 (holding that the trial court's statement that "the defendant has violated his terms of probation" failed to satisfy *Morrissey*'s written statement requirement and remanding to the trial court for a probation revocation statement consistent with the due process requirement). A trial court's failure to state the reasons for revocation and the evidence relied upon in a written statement does not constitute reversible error but merely requires our court to remand for a statement. *Breaziel v. State*, 568 N.E.2d 1072, 1073 (Ind. Ct. App. 1991). *See also Medicus*, 664 N.E.2d at 1165. Accordingly, we remand to the trial court for a probation revocation statement consistent with the due process requirement and this opinion. *See Medicus,* 664 N.E.2d at 1165.

Remanded.[4]

BAKER, J., and BAILEY, J., concur.

---

[4] We do not retain jurisdiction of this matter.